IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TYRUS D. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10cv498-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

In 1995, because of "mental retardation and dysthymia" (Tr. 69), Plaintiff Tyrus D. Brown was deemed disabled by Social Security and provided with supplemental security income benefits for and on his behalf pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. In 2006, after reaching the age of eighteen, the Agency reevaluated his qualification to continue receiving benefits as an adult, pursuant to § 1382c(a)(3)(H)(iii), and determined that Plaintiff's disability had ceased due to medical improvement. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ), which was conducted in two parts in February and August of 2008. Following the hearings, the ALJ also denied Plaintiff's claims. (Tr. 17-32). The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

(1) Is the person presently unemployed?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty years old at the time the hearing before the ALJ began, and reached the age of twenty-one prior to the hearing reconvening in August of 2008. Tr. 286-87. Plaintiff completed the eleventh grade. Tr. 287. Following the administrative hearing, and employing the five-step process,[5] the ALJ found that, since May 1, 2006, Plaintiff suffers from the following severe impairments: "borderline intellectual functioning, depression, and history of attention deficit hyperactivity disorder (ADHD)." Tr. 21. The ALJ then found that, since May 1, 2006, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Step 3) Tr. 25. Next, the ALJ found that, since May 1, 2006, Plaintiff has had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: a moderate degree of limitation of functioning in

---

[5] Because the cessation of Plaintiff's benefits was ordered upon the Agency's required reevaluation of his entitlement to benefits after reaching the age of eighteen, the ALJ applied the normal five-step evaluation process rather than the seven-step evaluation process applicable to other cessation cases. *See* 20 C.F.R. § 416.987(b). Furthermore, because the ALJ was "redetermining disability at age 18," the ALJ was not required to make a "Step One" finding respecting whether the claimant has previously engaged in substantial gainful activity. Tr. 19; 20 C.F.R. § 416.987(b). Nevertheless, the ALJ did find that Plaintiff "has never maintained gainful employment." Tr. 23.

>    ability to respond appropriately to supervisors, co-workers and other members
>    of the general public; ability to use judgment in simple one or two step work-
>    related decisions; ability to deal with changes in a routing [sic] work setting;
>    ability to understand, remember, and carry out simple, one and two step
>    instructions; ability to maintain attention, concentration or pace for periods of
>    at least two hours; and ability to maintain social functioning. The claimant has
>    a mild to moderate limitation in ability to maintain activities of daily living.
>    He has a marked limitation of functioning in ability to use judgment in detailed
>    or complex instructions and in the ability to understand, remember, and carry
>    out detailed or complex instructions. The claimant has no episodes of
>    decompensation.

Tr. 26-27. The ALJ then found that "claimant has no past relevant work" (Step 4). Tr. 30. Next, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, and after consulting with a vocational expert, since May 1, 2006, "claimant was able to perform a significant number of jobs in the national economy" (Step 5). Tr. 30. The ALJ found that such representative occupations include: "laundry worker," "grader/sorter," and "hand packer." Tr. 31. Accordingly, the ALJ determined that "claimant's disability ended on May 1, 2006, and the claimant has not become disabled again since that date." Tr. 32.

### IV. PLAINTIFF'S CLAIM

Plaintiff presents one issue for this Court's review in determining whether the Commissioner's decision is supported by substantial evidence: whether the ALJ erred in determining that Plaintiff's impairments do not meet Listing 12.05C. Pl.'s Brief (Doc. #12) at 1, 7.

### V. DISCUSSION

Plaintiff claims that the ALJ erred in failing to find that Plaintiff's mental impairments

6

meet Listing 12.05C, one of the sub-paragraphs containing criteria for the mental retardation listing. Plaintiff asserts that the ALJ's finding that Plaintiff suffers from borderline intellectual functioning, rather than mental retardation, contravenes evidence of his lifelong disability as well as the conclusion of the consultative examiner in 2006. Pl.'s Brief (Doc. #12) at 9-11. Plaintiff also argues that the ALJ's finding that Plaintiff suffers from less than disabling depression signals the ALJ's improper application of Listing 12.05C's requirement that, in addition to a requisite IQ score, a claimant must possess a "physical or other mental impairment imposing an additional and significant work-related limitation of function" in order to meet the Listing. *Id.* at 8-9. Defendant maintains that the ALJ correctly ruled that Plaintiff's impairments do not meet Listing 12.05C because he does not have deficits in adaptive functioning sufficient to satisfy the "diagnostic" clause of Listing 12.05.

The Listings grouped under 12.00 cover adult mental disorders. Listing 12.05 is concerned with mental retardation.

> Listing 12.05 "contains an introductory paragraph with the diagnostic description for mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A). The impairment must satisfy the diagnostic description in the introductory paragraph and any one of the four sets of criteria described in section 12.05 to meet the listing requirements. *Id.* Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22. *Id.* at 12.05. "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).
>
>   Listing 12.05(C) requires "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an

additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.05(C). To meet 12.05(C), the applicant must have a severe impairment that significantly limits the applicant's "physical or mental ability to do basic work activities." *Id.* at § 12.00(A). "Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

*Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009).

In considering whether Plaintiff's mental impairments met or equaled any of the listings under 12.00, the ALJ first examined whether "the 'paragraph B' criteria ("paragraph D" criteria of listing 12.05) are satisfied." Tr. 25. After a brief review of the evidence, the ALJ concluded that, "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria ('paragraph D' criteria of listing 12.05) are not satisfied." Tr. 26. Next the ALJ, in pertinent part, determined that Plaintiff does not meet the paragraph B criteria of Listing 12.05, which requires a "valid verbal, performance, or full scale IQ of 59 or less." Tr. 26. Finally, the ALJ concluded that, "for the reasons noted above, the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. 26.

The ALJ's conclusion that the "paragraph C" criteria are not met is problematic. First,

8

it is clear that Plaintiff has a "valid verbal, performance, or full scale IQ of 60 through 70" because Plaintiff obtained a full scale IQ score of 70 in March of 2006.[6] Tr. 249-50. The examiner credited Plaintiff's effort during the examination and indicated "that these scores are valid and are indicative of this claimant's current level of functioning." Tr. 250. It appears the ALJ also accepted this score as valid. Tr. 23 ("His effort during this measure was good; therefore, this score is considered valid and places his cognitive abilities in the uppermost limits of the mild range of mental retardation."). It is also clear that Plaintiff suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function," as the ALJ found that Plaintiff suffers from, *inter alia*, the severe impairment of depression. Tr. 21.[7] While the ALJ's opinion also indicates his belief that Plaintiff's depression had improved, Tr. 25, he nevertheless found the impairment severe. As such, the ALJ's finding about the "paragraph C" criteria is inconsistent with the

---

[6] Indeed, Plaintiff has previously obtained IQ scores of sixty and below. *See* Tr. 203, 215.

[7] The standard for an "additional and significant" limitation is the same as that for a "severe" impairment under 20 C.F.R. 404.1520(c) or 416.920(c). Under earlier versions of the regulation, as interpreted by the Eleventh Circuit, the "additional and significant" standard was lower than the "severe" standard. *See Edwards v. Heckler*, 755 F.2d 1513, 1515-16 (11th Cir. 1985); *see also Davis v. Shalala*, 985 F.2d 528, 531-32 (11th Cir. 1993). However, the Commissioner has modified introductory paragraph 12.00A and Listing 12.05C to clarify that the additional physical or mental impairment must be "severe." *See* 65 Fed. Reg. 50,746 at 50,754 (Aug. 21, 2000)("In final listing 12.05C . . . we used the word 'an' before the word 'additional' to clarify that the additional impairment must be 'severe' in order to establish 'an additional and significant work-related limitation of function."); *id.* at 50772 ("We have always intended the phrase [significant work-related limitation of function] to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c). . . . Therefore, . . . we revised the fourth paragraph of final 12.00A, which explains how we assess the functional limitations of an additional impairment under listing 12.05C.").

evidence in the record and the ALJ's other findings about Plaintiff's IQ scores and the severity of Plaintiff's other impairments. More importantly, the ALJ's finding that Plaintiff lacks an additional physical or mental impairment causing "significant work-related limitation of function" is erroneous as a matter of law. *See Carroll v. Astrue*, 2009 WL 1708073 at *1-2 (M.D. Ala. June 17, 2009).

Defendant argues that the ALJ's finding that Plaintiff does not meet listing 12.05C is supported by substantial evidence because, regardless of the applicability of the paragraph C criteria, Plaintiff does not satisfy the "diagnostic" description of mental retardation because he does not have sufficient deficits of adaptive functioning. Def.'s Brief (Doc. #13) at 9. It should first be noted that the ALJ's findings with respect to Plaintiff's adaptive functioning lack the clarity and indicia of thorough consideration required to fully credit Defendant's assertion. That is, while the ALJ appears to conclude that Plaintiff's "adaptive functioning has consistently been in the borderline range of intellectual functioning and not in the mentally retarded range," Tr. 26, the ALJ does not devote any considerable portion of his opinion to discussing Plaintiff's deficits in adaptive functioning or otherwise explaining this finding. Nevertheless, while Defendant's after-the-fact rationale for upholding the ALJ's decision may prove supported by some evidence in the record, it is not the rationale articulated by the ALJ. As set forth above, the ALJ made a specific finding that Plaintiff does not meet the paragraph C criteria of Listing 12.05, and such finding appears inconsistent with the medical evidence, other aspects of the ALJ's own opinion, and/or governing law.

Where the ALJ's decision appears so encumbered with inconsistencies and ambiguity, the court cannot conclude that the ALJ applied the correct legal standards and, accordingly, reversal is in order. *See Grant v. Astrue*, 255 F. App'x 374, 374 (11th Cir. 2007) ("'[T]he Secretary's conclusions of law are not presumed valid. The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'") (quoting *Keeton v. Dep't of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Carroll*, 2009 WL 1708073 at *1 ("If the court finds an error in the ALJ's application of the law, *or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted,* the ALJ's decision must be reversed.") (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) (emphasis in original)); *id.* at *1-2 ("Because the ALJ failed to address explicitly either the validity of the plaintiff's IQ score or the requirements of the introductory paragraph of Listing 12.05C, and because the reason the ALJ gave for his determination on the "paragraph C" criteria is erroneous as a matter of law, the court cannot conclude that the ALJ employed the proper legal analysis.").

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for further proceedings. A separate judgment will issue.

DONE this 18th day of May, 2011.

                                              /s/ Wallace Capel, Jr.
                                             WALLACE CAPEL, JR.
                                             UNITED STATES MAGISTRATE JUDGE